# UNITED STATES DISTRICT COURT
# OF THE
# DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JON L. BRUNENKANT | ) | |
| 2900 K Street NW | ) | |
| Suite 607 | ) | |
| Washington, DC 20007, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. |
| | ) | |
| JOSEPH P. SMITH | ) | |
| 47 E. 87th Street | ) | |
| New York, New York 10128-1005, | ) | |
| Defendant, | ) | |
| | ) | |
| JOSEPH J. GRILLO | ) | |
| 4 Ormond Park | ) | |
| Glen Head, New York 11545, | ) | |
| Defendant, | ) | |
| | ) | |
| JOSEPH P. HICKEY | ) | |
| 252 Avenida Granada | ) | |
| San Clemente, California 92672, | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff Jon L. Brunenkant brings this action against Defendants Joseph P. Smith

("Joseph Smith"), Joseph J. Grillo ("Joe Grillo") and Joseph Hickey ("Joe Hickey") to overturn an

unauthorized sale by Defendant Joe Hickey of ownership interest in several restaurants in

Washington, DC and elsewhere or alternatively to enforce the Plaintiff's contractual right to a

percentage of these ownership interest from Defendant Joe Hickey; and to recover costs and

damages caused by the tortious interference of Plaintiff's contract with Defendant Hickey by

Defendants Joseph Smith and Joe Grillo.  Additionally, based on the facts in this case, Plaintiff requests punitive damages be entered against Defendants Joseph Smith and Joe Grillo. In support of this Complaint, Plaintiff states the following:

**Parties**

1. Plaintiff Jon L. Brunenkant is a citizen of the District of Columbia residing at 2900 K Street NW, Ste. 607, Washington, DC 20007. Mr. Brunenkant is a practicing attorney in Washington, DC who had represented Defendant Joe Hickey for several years.

2. Defendant Joseph Smith is a citizen of New York residing at 47 E. 87th Street, New York, New York 11753-1210. Mr. Smith is the primary owner and responsible for the operations of seven of the restaurants in Washington, DC and elsewhere involved in this case that all operate under the same brand name.

3. Defendant Joe Grillo is a citizen of New York residing at 4 Ormond Park, Glen Head, New York 11545. Mr. Grillo is employed with S. J. Grillo, CPA with its principal place of business at 420 Jericho Turnpike, Ste. 334, Jericho, New York 11753. Mr. Grillo acts as Defendant Smith's chief business advisor, he acts as the accountant and CPA for the restaurants in Washington, DC involved in this case, and he prepares all the tax filings and federal loan applications on behalf of these restaurants.

4. Defendant Joe Hickey is a citizen of California residing at 252 Avenida Granada San Clemente, California 92672. Mr. Hickey is retired but previously he was one of the original four operating owners of the restaurants involved in this case, he worked at the restaurants in Washington, DC for almost two decades, and he signed

the contract at issue in this case which provides for the contract to be construed in accordance with the laws of the District of Columbia.

**Jurisdiction and Venue**

5. This Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332(a) where the Defendants and Plaintiff are citizens of different states and the amount in controversy exceeds $75,000.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and the District of Columbia's long-arm statute, D.C. Code § 13-423(a), because the Defendants are subject to personal jurisdiction in this judicial district. *See, Calder v. Jones,* 465 U.S. 783, 104 S. Ct. 1482, 79 L.Ed.2d 804 (1984); *McGee v. International Life Ins. Co.,* 355 U.S. 220, 223, 78 S. Ct. 199, 2 L.Ed.2d 223 (1957); *International Shoe Co.* v. State of *Washington, Office of Unemployment Compensation and Placement*, 326 U.S. 310, 319, 66 S. Ct. 154, 90 L.Ed. 95 (1945); *GTE New Media Services, Corp.* v. *Bellsouth Corp.*, 199 F. 3d 1343, 1347 (D.C. Cir. 2000); *Shoppers Food Warehouse* v. *Moreno*, 746 A. 2d 320 (D.C. 2000).

   a. The Contract between Plaintiff and Defendant Hickey provided for the contract to be construed in accordance with the laws of the District of Columbia, the Plaintiff's law practice is based in Washington, DC, and the services he provided were for legal services in Washington, DC. Additionally, several of the restaurants involved in this case are in Washington, DC. Defendant Smith is the Control Person for the restaurants in Washington, DC and regularly comes to Washington, DC to transact business. Defendant

3

Grillo advises Defendant Smith about the ownership and operations of these restaurants, supervises the accounting, prepares the tax forms and returns, and filed for federal government loans under the PPP program for the restaurants in Washington, DC.  Both Defendant Smith and Grillo have received and initiated calls to Plaintiff in Washington, DC about Defendant Hickey's ownership of these Washington, DC restaurants.

b.   Defendant Hickey has known Plaintiff for two decades and during that time he has provided legal advice to Defendant Hickey. Defendant Hickey knew that Plaintiff was only licensed to practice in the District of Columbia.

c.   In entering the Contract, Defendant Hickey intended to purposefully avail himself of the privilege of conducting activities in the District of Columbia.

d.   The Contract has a substantial connection to the District of Columbia as do the quality and nature of Defendant Hickey's activities.

e.   Defendant Hickey regularly called Plaintiff since 2017 to discuss the restaurants in DC and his legal disputes involving the other defendants here.

f.   Defendant Hickey was aware that Plaintiff had sued Defendant Smith and Defendant Grillo in another case in this court on behalf of another client and intended Plaintiff to file a complaint in this court against these other defendants on his behalf.

g.   Under the terms of the Contract, Plaintiff was to receive 25% of Hickey's ownership interests in restaurants in the District of Columbia.

    h.  Defendant Smith and Grillo induced Defendant Hickey to breach his Contract with Plaintiff.

    i.  Defendants Smith and Grillo knew their interference with the Contract between Plaintiff and Defendant Hickey would cause Plaintiff harm by depriving him of ownership interests in restaurants in Washington, DC.

    j.  Defendants Smith and Grillo knew that the harm caused by their actions would in Washington, DC where Plaintiff lived and worked and where the restaurants were located.

    k.  Defendants Smith and Grillo were the primary participants in the alleged wrongdoing intentionally directed at a DC resident.

    l.  Defendants Smith and Grillo's actions sought to deprive Plaintiff of his ownership interests in these restaurants to permit Defendant Smith to acquire such interests and were intentionally directed at Plaintiff who both Defendants knew to be a DC resident.

    m.  Defendants Smith and Grillo expressly aimed their intentional and tortious conduct at a DC resident.

7.  Defendants Smith and Grillo who were part of an unlawful conspiracy are also subject to this Court's jurisdiction under a conspiracy theory of personal jurisdiction. *See, FC Inv. Grp. LC* v. *IFX Markets, Ltd.*, 529 F.3d 1087, 1096 (D.C. Cir. 2008); *Second Amendment Foundation* v. *U.S. Conference of Mayors*, 274 F.3d 521, 523 (D.C. Cir. 2001).

a. Defendants Smith and Grillo engaged in a conspiracy to cause Defendant Hickey to breach his Contract with Plaintiff to obtain Plaintiff's ownership interests under that Contract.

b. Defendants Smith and Grillo had been sued previously in Washington, DC (in this Court) by a third party represented by Plaintiff.

c. Plaintiff and Defendants Smith and Grillo had engaged in negotiations with respect to Defendant Hickey's ownership interests in restaurants in Washington, DC and they knew Plaintiff was to receive a percentage of Defendant Hickey's ownership interests. They conspired to deprived Plaintiff of such ownership interests.

d. The intent and effect of this conspiracy was to cause substantial harm to a DC resident and affect the operation of the DC restaurants.

e. The negotiation and drafting of a secret agreement by Defendants Smith and Grillo were unlawful overt acts done in furtherance of their conspiracy scheme.

**Facts**

8. Plaintiff Brunenkant had been representing Defendant Joe Hickey for some time without any compensation in connection with his disputes with his primary partners in nine restaurants in Washington DC and elsewhere operating under the same brand (hereinafter referred to as the "Steak Restaurants").

9. Defendant Joseph Smith, Defendant Joe Hickey, Richard Passarelli and Joseph Pfair were the operating shareholders (or operating members) (collectively the "primary partners") who managed the nine Steak Restaurants.

10. Six to seven years ago Defendant Joe Hickey retired from active participation in the daily operations of these nine Steak Restaurants, and he sold his then-existing interest in one of the restaurants to Joseph Pfair but retained his ownership interest in the remaining eight Steak Restaurants.

    a. These eight Steak Restaurants included (1) JJJ&R Corporation, 230 Park Avenue, New York, NY, (2) J. Caldwell Corp., 25 Broad Street, New York, NY, (3) Veronica & Josephine Corp., 120 West 45th Street, New York, NY, (4) C. Smith Corporation, 135 W. 50th Street, New York, (5) Herbert Street LLC, 131 54th Street, New York, (6) BV at JFK, Inc., JFK Airport, American Airlines—Terminal 8, Queens, NY, (7) RJJJ Rest. Corp., 809 15th Street NW, Washington, DC, and (8) Strathroy Park Corporation, 1201 New York Avenue NW, Washington, DC.

11. On or about May 17, 2017, Defendant Hickey had signed an agreement to sell his interests in eight of the Steak Restaurants to Defendants Joseph Smith and Joseph Pfair. That agreement was vague and cancelled but Defendant Hickey was never given an accounting for the monies otherwise due him for the past few years and his primary partners took actions as if Defendant Hickey no longer had any ownership interests.

12. During the period between 2016 – 2020, Defendant Smith, Joseph Pfair and Joseph Passarelli exchanged ownership interests in the nine Steak Restaurants among themselves without consulting Defendant Hickey, and they even exchanged Defendant Hickey's ownership interests without his authorization.

13. As of September 1, 2020, Defendant Smith had become the sole control partner operating seven of the original nine Steak Restaurants; Richard Passarelli had become the sole control partner operating one of the Steak Restaurants (the one owned by JJ&R Corporation); and Joseph Pfair had become the sole control partner operating the ninth Steak Restaurant.

14. On December 21, 2020, Plaintiff Brunenkant and Defendant Hickey formalized their attorney-client agreement with the execution of a Contingency Fee Agreement ("Contract ") (attached hereto as Exhibit A).

    a.  Plaintiff was to establish (or re-establish) Defendant Hickey's ownership interests in the eight Steak Restaurants and pursue his claims for damages and restitution.

15. Defendant Joseph Smith, Richard Passarelli and Joseph Pfair have been aware since at least 2019 that Plaintiff would be pursuing Defendant Hickey's legal claims against them.

16. In 2020 through early 2021 Plaintiff and Defendant Smith discussed the parameters of a settlement of issues and sale of Defendant Hickey's ownership interests. In fact, the general parameters of a settlement and sale had been tentatively agreed upon.

17. Defendant Smith informed Plaintiff that Defendant Grillo was authorized to discuss with Plaintiff a settlement of Defendant Hickey's claims and sale of his ownership interests.

18. Defendants Smith and Grillo knew that Defendant Hickey's fee arrangement with Plaintiff granted him a percentage in each of the eight Steak Restaurants.

19. On or about July 1, 2021, Defendant Smith approached Defendant and made him an offer to purchase his interest in seven of the Steak Restaurants (including the ownership interests owed to Plaintiff). A condition of his offer was that it be kept a secret from Plaintiff.

20. Defendant Grillo was involved to draft the secret agreement with Defendant Hickey again with the requirement that Defendant Hickey does not show or discuss such agreement with Plaintiff.

21. Plaintiff only became aware of this secret arrangement between Defendants Smith, Grillo and Smith after a telephone call with Defendant Hickey. A separate call to Defendant Smith confirmed the basic substance of their secret arrangement.

22. Defendants Smith and Grillo clearly took advantage of their fiduciary relationships with Defendant Hickey and Defendant Hickey's very vulnerable emotional state at the time in proposing to purchase Defendant Hickey's shares at fraction of their market worth and substantially below the parameters that had been discussed in settlement with Plaintiff, and at the same time attempting to obtain the shares owed to Plaintiff without his consent.

23. At this time, it is unclear if Defendants Smith and Grillo acted alone or in concert with others in their plan to take advantage of Defendant Hickey and tortiously interfere with Defendant Hickey's Contract with Plaintiff and Plaintiff's ability to advise Defendant Hickey.

24. On July 20, 2021, Plaintiff sent Defendant Smith a letter (attached as Exhibit B) requesting Defendant Smith acknowledge Plaintiff's ownership of 25% of Defendant Hickey's interest in seven of the Steak Restaurants. Defendant Smith refused to recognize Plaintiff's interest and did not respond to the letter.

**COUNT I**
(BREACH OF CONTRACT-VOID SECRET AGREEMENT)

25. Plaintiff incorporates in this Count those assertions and facts set forth in Paragraph 1 through 23 above, as if fully set forth herein.

26. Paragraph VI of the Contract grants Plaintiff a lien on Defendant Hickey's ownership interests in the eight Steak Restaurants

27. Paragraph IX of the Contract required Defendant Hickey to notify Plaintiff as to receiving any offer of settlement or compromise with respect to his interests in the eight Steak Restaurants. Defendant Hickey materially breached the contract by entering into an agreement with Defendant Smith to sell his interests in seven of the Steak Restaurants without notifying Plaintiff and without his approval.

28. Plaintiff believes the best interests of Defendant Hickey will be served by the Court rejecting as unenforceable any agreement between Defendants Hickey and Smith since it did not have Plaintiff's approval.

29. Defendant Hickey did not have the authority to enter into the secret agreement with Defendant Smith and he certainly could not sell to Defendant Smith the ownership shares already committed to Plaintiff. The Court should cancel the secret agreement as unenforceable.

30. The Contract should remain in effect and allow Plaintiff to pursue a more equitable resolution, including a potential sale a third-party purchaser at a market price and thus also allow Plaintiff the continuing right to retain his ownership interest in the Steak Restaurants as provided for under the terms of the Contract.

**COUNT II**
**(BREACH OF CONTRACT- SPECIFIC PERFORMANCE)**

31. Plaintiff incorporates in this Count all allegations and facts set forth in paragraphs 1 through 29.

32. Paragraph IV of the Contract requires Defendant Hickey to pay Plaintiff (at his option) 25% of Defendant Hickey's ownership interest in the eight Steak Restaurants listed in the Contract. Defendant Hickey materially breached the Contract in failing to transfer that 25% of his ownership interests to Plaintiff.

33. Defendants Hickey, Smith and Grillo were aware of Plaintiff having the right to 25% of Defendant Hickey's ownership interests before they sought to engage in a secret arrangement between themselves.

34. Plaintiff incurred damages because of Defendant Hickey's breach of the Contract and since Plaintiff had previously informed Defendants that he had exercised his option to receive the 25% interest of Defendant Hickey's ownership interests,

11

Defendant Hickey did not have the legal right and was without authorization to sell those shares to Defendant Smith.

35. Plaintiff values the 25% interest of Defendant Hickey's ownership interests at $750,000 and believes Defendant Hickey would be unable to pay monetary damages.

36. Plaintiff requests the Court order Defendants Hickey to convey to Plaintiff the following ownership interests in the eight Steak Restaurants listed in the Contract:

   a. C. Smith Corporation—5.46%;

   b. Herbert Street LLC—0.43%;

   c. J. Caldwell Corp.—5.78%;

   d. Veronica & Josephine Corp.—6.18%;

   e. BV at JFK Inc—8.74%;

   f. RJJJ Rest. Corp.—3.91%;

   g. Strathroy Park Corp.—5.51%; and,

   h. JJJ&R Corporation—6.06%.

**COUNT III**
(TORTIOUS INTERFERENCE WITH CONTRACT)

37. Plaintiff incorporates in this Count all the allegations and facts set forth in the paragraphs 1 through 35 above, as if set forth herein.

38. Defendants Smith and Grillo were aware of Plaintiff's legal representation of Defendant Hickey and were further aware that Defendant Hickey and Plaintiff had agreed that Plaintiff would receive at least 25% of Defendant Hickey's ownership interests in the eight Steak Restaurants.

39. Defendants Smith and Grillo had been engaged in negotiating with Plaintiff the purchase and sale of Defendant Hickey's ownership interest and were thus fully aware of Plaintiff's representation of Defendant Hickey and his Contract with Defendant Hickey.

40. Defendants Smith and Grillo intentionally and with malice interfered with Plaintiff's Contract and caused harm to Plaintiff.

41. The facts and circumstances surrounding the tortious interference with Plaintiff's Contract justifies the finding of Punitive Damages against Smith and Grillo. This is an instance where two very knowledgeable and sophisticated persons intentionally took advantage of another person (Defendant Hickey) and sought to deprive him of legal counsel and force him to breach the Contract to enter into a secret agreement for the sole benefit of Defendants Smith and Grillo.

42. Defendants Smith and Grillo sought to defraud Plaintiff of his ownership interests in the eight Steak Restaurants by tortiously interfering with the Contract.

43. Plaintiff requests the Court impose $1 million-dollar punitive damage award on Defendants Smith and Grillo jointly and severally.

**COUNT IV**
(CONSPIRACY TO INTERFERE WITH CONTRACT)

44. Plaintiff incorporates in this Count all the allegations and facts set forth in the paragraphs 1 through 42 above, as if set forth herein.

45. Defendants Smith and Grillo acted in concert and conspired to defraud Plaintiff by interfering with his Contract with Defendant Hickey.

13

46. Defendants Smith and Grillo negotiated with Defendant Hickey on the condition that their negotiations and the separate arrangement they reached be kept secret and hidden from Plaintiff.

47. Defendants Smith and Grillo intentionally participated in a scheme to defraud Plaintiff by interfering with his Contract with Hickey with full knowledge of their actions and the harm they would inflict on Plaintiff.

48. Defendants Smith and Grillo wanted to acquire the ownership interests that Plaintiff acquired under the Contract and they wanted to prevent Plaintiff's direct involvement in reviewing the operations and finances of the seven Steak Restaurants. They chose to engage in an illegal conspiracy to achieve their objectives.

49. In view of the blatant nature of the conspiracy by Defendants Smith and Grillo and their dual intent to deprive Defendant Hickey of legal representation and cause Defendant Hickey to breach the Contract to obtain both Defendant Hickey's remaining 75% ownership interest in seven Steak Restaurants plus Plaintiff's 25% ownership interest, punitive damages of $1 million should be imposed on Defendants Smith and Grillo.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests judgment against Defendants as follows:

A. Regarding Defendant Hickey's breach of the Contract, Plaintiff requests the Court order either (i) that the Contract remain in effect by finding the secret agreement between Defendants Hickey and Smith to be null and void or (ii) that

25% of Defendant Hickey's ownership interest in the eight Restaurant companies be transferred to Plaintiff as required by the Contract.

B.   Regarding Defendants Smith and Grillo's tortious interference with the Contract and their conspiracy to defraud Plaintiff by such interference, Plaintiff requests the Court impose a $1,000,000.00 punitive damage award against Defendants Smith and Grillo jointly and severally.

C.   Plaintiff requests he be awarded all costs incurred in pursuing this Complaint, including the value of Plaintiff's time spent on this case, and other costs and awards as deemed appropriate by the Court.

Respectfully submitted,

Jon L. Brunenkant, *Pro Se*
DC Bar No 966630
Brunenkant & Associates, PLLC
1717 Pennsylvania Avenue, NW
Suite 1025
Washington, DC 20006

(202) 494-4102
jonbrunenkant@gmail.com

November 11, 2021